Good morning, Your Honors. My name is Lori Rosenberg. I'm co-counsel pro bono for Mr. Fernando Malta-Espinoza, the petitioner. And this case is perhaps as difficult as any case involving the categorical and modified categorical approach. And it's also as simple as any case involving the categorical and modified categorical approach. In this particular case, Mr. Malta was convicted of stalking under a California code that defines the offense as following or harassing and making a credible threat such that would put a person in fear for his or her safety. Those are the basic elements of the offense. There is an intent element, the intent being in making the credible threat. And the following and harassing is also done willfully, knowingly or maliciously. However, this case is, while it's influenced by the Leocal decision, it's not really controlled by it, because the issue in this case really has nothing to do with the mens rea portion of the elements of the offense. The question is, is stalking as defined as following or harassing and making a credible threat a case in which there is a substantial risk that physical force may be used in completing the crime? And our position is, no, there is not. And there may be in some cases that the profound psychological question is. Pardon me? What is a stalker? I'm just, I'm just. Well, one of the, one of the very interesting and distinguishing facts in this particular case is that all, a stalker is one, I would say, who threatens, and as defined in the California statute, he can annoy, he can torment, he can even terrorize. But none of those activities necessarily are such that to accomplish them, you have to be in physical proximity to the victim. I was just curious about whether there was any psychological. Oh, yes. Well. There's nothing in this record, I guess, as to what a. No, no. And really the issue is here, what is the minimum conduct necessary to complete this crime, because we look at, by law, we look at not what the ultimate possibility might be in one case or even ten cases or a hundred cases, but we look at either what does the statute say on its face, are the elements of this offense, and if the statute's elements tell us that it's a crime in which the use of force is a necessary element, an essential element, then that's 16A of 18 U.S. Code 16, and that's the end of the inquiry. Well, doesn't the California case on which you rely establish that it doesn't categorically qualify?  So we're really pushed right away into a modified. Right. So then we move into the modified. But the reason it's important, the reason I dwell on that to the extent that I do, is that really the Taylor inquiry as I see it is one that requires you to go through that first step, because if you look at Leocal, for example, it will say the same inquiry of how do you construe use, the word use, which is in the statute, how do you construe the word force, how do you construe the elements in the same way as you do in the 16A categorical analysis, is it an actual element of the offense, will carry over to 16B, and it will carry over even if it's a 16A inquiry into a modified categorical approach. The Ninth Circuit has many, many cases which are cited in my brief, of which I'm sure you're aware, in which the Court has been very, very clear. The question is not, when we go to the modified categorical approach, the question is not is there any possible set of facts under which one could engage in conduct that would involve a reckless disregard for the use of force. That's not the question at all. The question is in this record, in this particular case, are there any documents that prove or indicate elements from which we can conclude there's a substantial risk that force may be used. And the only documents in this record are a minute order that just basically states that the defendant in that case pled to the count with which later became the basis for the order, for the notice to appear, and an abstract of judgment, which this Court has also called into question on several occasions. It is consistent with the minute order. It simply recites that Mr. Malta was convicted under the California Code 646.9b. The only other document in the record for the Court to look at in determining whether under the modified categorical approach this is a case in which there's a substantial risk that force may be used is an amended felony complaint. And the amended felony complaint simply recites the language of the statute. It basically just says he did maliciously and repeatedly follow and harass this person and make a credible threat with the intent she be placed in reasonable fear. That's the exact language from the statute. And so we really don't get any more information to tell us that the offense in this case is one in which, in fact, there is a substantial risk. Isn't that the normal way of charging somebody, charge them in the words of the statute? Yes. It is the normal way of charging. So what you're suggesting, then, is there is no way that we could ever get? No, that's not correct, Your Honor, if I may. With all due respect, for example, in the Ninth Circuit, United States v. Rivera-Sanchez or United States v. Corona-Sanchez articulate the evidence that may be in a record that the Court can look to, including a plea transcript, a plea colloquy, a sentencing colloquy, a statement confirming the facts underlying the basis for a plea. None of that is present here. And the Ninth Circuit has ruled very clearly that ---- Was it denied by Walter Espinoza? Did he deny that this was true? Yes, he did. As a matter of fact, in the transcript before the immigration judge, he says he's unrepresented, and he says he admits that he was convicted of stalking. And, in fact, he's been found deportable on the basis of an offense of stalking, which is a separate freestanding stalking offense, and we're not challenging that. And he says in the transcript I cited in my brief with the record page there, he says, stalking isn't a violent offense. And one of the most remarkable examples, I think, in this particular case concerning this particular statute is the story of the stalking of Steven Spielberg, in which Mr. Spielberg and his family were in Europe, and 5,000 miles back here in California, a stalker by the name of Mr. Norman was, you know, had been following him around and appearing at his premises where his family lived. And his attorney, while the Spielbergs were away in Europe, his attorney called him to say, well, this gentleman had been here, he had leapt over the fence, and they called the police, and he's under arrest. And later in the prosecution of this man, Mr. Norman, in the California courts, the court found that being told by your attorney, in other words, once removed from the stalker actually making the credible threat to you, but just receiving that through your attorney, when you're geographically 5,000 miles away and nothing could happen to you immediately, and, you know, was sufficient to meet the element of following, harassing, and placing in making a credible threat that places somebody in fear. Mr. Norman repeated this behavior again and made a threat towards Mr. Spielberg when he was in jail. So the court once again found him to have violated the statute when it wasn't a question of geographic proximity, but sort of physical impossibility. He was behind bars, and yet they found that that was a sufficient situation in which a victim could be placed in fear and followed or harassed. If that's true, then that means that the minimum conduct for violating this California criminal statute is so incredibly low that in a case like that, there's absolutely no risk that there could be physical force used to accomplish the crime. If you can send a letter while you're behind bars. Therefore, our position is that without specific information in this record indicating that Mr. Malta actually did make a threat, jump out of the bushes right in somebody's face, which there is no evidence of that. He wasn't charged with that. It wasn't alleged. All that's been charged is that he was harassing. And this particular statute contemplates the harassing being done and the stalking being done electronically. And many of the State cases talk in terms of the fact that, in fact, the stalker can make the threat. Oh, I'm running out of my time. So I should end because I do want to save at least one second or five seconds. MS. GOTTLIEB Oh, thank you very much. But just to conclude that thought, just to say that, you know, it's possible to make that threat electronically from a different country at a different time than it's even received. Thank you. MR. GARGANO Good morning, Your Honors. May it please the Court, we emerge from the Department of Justice representing the Respondent in this matter, Alberto Gonzalez, United States Attorney General. Your Honors, contrary to Petitioner's claims, Petitioner's conviction for stalking under Section 646.9b of the California Penal Code is, in fact, a crime of violence under 18 U.S.C. 16b. And therefore, Petitioner's removal from the United States is an aggravated felon and is statutorily ineligible for cancellation or removal, as the Board of Immigration's appeals found. Your Honors, let's look at the record of conviction in this case, and it clearly establishes under the test for what a crime of violence is under 18 U.S. 16b, that there has to be a substantial risk of physical force being used in the commission of the crime. Your Honors, returning to the conviction documents and the other documents in the record, it clearly establishes that there is substantial risk, that's all that needs to be shown here, substantial risk, that physical force will be used. Specifically, we have the Petitioner in this case who willfully and maliciously followed and harassed. There's the two requirements, followed and harassed under 1646.9b. Not only did he maliciously follow and harass, he did it after a court had specifically, a state court had specifically told him not to approach his victim. Despite an injunction being entered by the state court, Petitioner continued to follow and harass his victim. And in the commission, what in there, how do we establish that in the record? Was the injunction, the restraining order was what? It couldn't approach in 300 yards? How was it? The injunction specifically states in the charging documents that he was prevented from doing the exact actions that he had done with the second commission. What does it specifically state? It was not to follow or harass or approach the Petitioner or his victim. I would point to page 126 of the administrative record. And also, during the commission of the crime in which he was convicted, he cut the telephone line of the victim's telephone. So when you take a look. Was he pleaded guilty to cutting the utility line? Yes, he was. And in fact. Pleaded guilty. Yes. Contrary to Petitioner's counsel's claims, he in fact pled guilty to maliciously, willfully following and harassing his victim under a court order, despite having a court order. That's clearly set forth in the record, Your Honor. So then we now. If I understand your opponent's argument, it's that following and harassing is part of the statute. And. That's correct, Your Honor. The person who followed and harassed Steven Spielberg was convicted of those very things, even though Steven Spielberg was 5,000 to 8,000 miles away. I would submit, Your Honor, this Spielberg case has basically absolutely nothing to do with this case. That was. Spielberg was not even in the United States. And. But I guess the question is, was that person convicted of following and harassing? I don't know. I don't believe so, Your Honor. That's what the statute says, and that's what. I'm sorry, Your Honor. Because that's. Those are the statutory words, and I just don't know. Well, if I understand correctly, the statute, if I remember correctly, says falling or harassing. Yes. In this situation, he pled guilty to following and harassing. Well, you don't. You know, this is we're in California. We have stalkers in California who are worshiping the people that they're stalking, because they could violate this statute if they're just trying to get a glimpse. I suppose the paparazzi could be stalking in that sense. Right, Your Honor. But what we have in this case is we have the following, in harassing plus an injunction permitting. But you're not talking about the categorical. No. Clearly, we're under the modified categorical. I'm sorry. You concede that? Yes. Okay. I'm sorry. The Board of Immigration Appeals states that we're under the modified categorical approach because it's a divisible statute, because you have harassing or. Right. So when we look to the statutory language. That is not clear. Okay. If we look to the statutory language of 18 U.S.C. 16b, it looks, we determine whether or not there's substantial risk of physical force being used. When you add up the facts in this case supported by the indictment and the other charging documents in this case, the board was correct in finding that there is a substantial risk that violence would be used, or not violence, but physical force would be used. I mean, it's a very logical process. You follow and harass somebody. The natural intensity is that the harassee is going to object. That, in fact, is the intent of the harasser, to actually, to get some kind of reaction out of the person he's harassing. One of those logically, possibly, is going to be a physical reaction to someone who's saying, please leave me alone, get away from me. So we would submit, Your Honor, that under 18 U.S.C. 16b, that this crime is a crime of violence and therefore Petitioner is an aggravated felon. I'd like, if I have a few more minutes, which I still do, Your Honor, I'd like to bring up a couple of points that in some of the cases that Petitioner's counsel relies on. She cites a series of cases in which they define the crime of violence under a completely different statutory scheme, particularly the U.S. sentencing codes. There, the definition of crime of violence is whether or not there's actual physical injury. Here, we would submit that's not the standard being used. It's substantial risk of physical force, and it's a much lower standard. So I think that's an important distinction in this Court, if you keep in mind. In summation, Your Honors, if there's no further questions, we would submit that Petitioner is charged with a crime of violence and therefore is an aggravated felon, and does not meet forms of relief.  MS. GOTTLIEB Thank you, Your Honors, for a moment for rebuttal. In fact, this, the argument made by counsel for the government brings out the fact that this is an erroneous decision by the Board of Immigration Appeals in which the Board has actually violated its own precedents in saying that we know this is the Board speaking, saying that we know that this is a crime of violence because it was committed by somebody who had previously been the subject of a restraining order. It is textbook law that in construing an offense to determine whether it's an aggravated felony, the Board is not to look at what the person does, did, could have done, might have been thinking about doing, but what was the offense of which he was convicted as determined by the record of conviction that's before this Court now. And what is before this Court now is a minute order that recites that the individual was convicted of stalking under 646.9b, an abstract of conviction that says the same, and an amended felony complaint that basically says that the individual followed or harassed and made a credible threat. MR. GOTTLIEB No, it said followed and harassed. MS. GOTTLIEB Pardon? MR. GOTTLIEB No, it said followed and harassed. MS. GOTTLIEB The felony complaint. MR. GOTTLIEB Uh-huh. MS. GOTTLIEB But I guess I would address the issue you're raising about the follow or harassed or followed and harassed, and I would basically say that it's a distinction without a difference, and here's the reason why. Number one, what's really before this Court right now is only review of the Board's order, as you know, and what the Board found was that, in fact, the record only showed that he had harassed. That's an error that the Board made, but that's the decision that you're reviewing is a decision they're finding that Mr. Malta harassed, and since he was harassing under the conditions of having a restraining order, and because this is a serious crime just by its own definition, more of like a categorical analysis, then therefore, since it's an offense that has to be continuing, it must be one in which the risk is substantial that force will be used. Now, the government is making an argument that's different than what the Board found, and the government is arguing that the charge was followed and harassed, and in fact, he pled guilty to that. I can't disagree with that. That's what the record says to me, but that's not what the agency found. So I think the main point that's actually more important, because as I address in my brief, if you think about what is the conduct of following and what is the conduct of harassing, I think if you're concerned about physical proximity where there could be a confrontation, it seems to me more likely that a finding of following would have more of a substantial risk, although I wouldn't call it substantial, because one can follow from a car. One can follow with binoculars. One can certainly follow in the sense that Steven Spielberg was followed all the way over in Europe. So, you know, I think the main point here is that this decision by the Board of Immigration Appeals, which was not at what this person was convicted of, but what did he do. And it's not even based on evidence of what he did. It's based on the Board's imagination of what he did. So with that, I would say that I hope the Court will find that the Board erred in making this ruling and vacate the order in remand so that Mr. Malta may apply for cancellation of removal. Thank you. They just argued it's submitted for decision. We'll hear the next case, which is
judges: Schroeder, Canby, Duffy